UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| AARON K. DANIELS, | Case No. 3:14-cv-00499-RCJ-WGC |
| Plaintiff, | **REPORT & RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |
| v. | Re: ECF No. 33 |
| DR. DAVID MAR, | |
| Defendant. | |

This Report and Recommendation is made to the Honorable Robert C. Jones, Senior United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is defendant Dr. David Mar's Motion for Summary Judgment. (ECF Nos. 33, 33-1 to 33-9, 35-1.) Plaintiff filed a response (ECF No. 45), and Dr. Mar filed a reply brief (ECF No. 46).

After a thorough review, it is recommended that Dr. Mar's motion be denied.

## I. BACKGROUND

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Am. Compl., ECF No. 7.) The events giving rise to this action took place while Plaintiff was housed at Ely State Prison (ESP). (*Id*.) Dr. Mar is the only defendant.

Plaintiff originally filed this action on September 26, 2014. (ECF No. 1-1.) He did not file a completed application to proceed in forma pauperis (IFP), and was directed to do so or pay the filing fee or face dismissal of his action. (ECF No. 3.) On October 8, 2014, he filed a renewed IFP application. (ECF No. 4.) On January 2, 2015, he filed a proposed amended complaint. (ECF No. 5.) District Judge Jones screened the proposed amended complaint, directed the Clerk

1  to file it (filed as ECF No. 7). District Judge Jones concluded, however, that Plaintiff failed to state
2  a colorable claim upon which relief could be granted; denied the IFP application as moot; and,
3  dismissed the action in its entirety. (ECF No. 6.) Plaintiff appealed. (ECF No. 10.)

4        On November 2, 2016, the Ninth Circuit issued a memorandum decision affirming in part,
5  reversing in part, vacating in part, and remanding the matter. (ECF No. 16.) First, the Ninth Circuit
6  found that the district court properly dismissed Plaintiff's Fourteenth Amendment due process
7  claim. Second, the Ninth Circuit stated that dismissal of Plaintiff's Eighth Amendment deliberate
8  indifference claim against Dr. Mar was improper, finding sufficient allegations that Dr. Mar
9  refused to approve orthopedic shoes previously approved by another doctor, that he needed as a
10 result of surgery, and suffered in pain without them. Third, the Ninth Circuit determined that
11 dismissal of the claim against Jones, Garner, and Bannister was proper because Plaintiff had not
12 alleged facts sufficient to show these defendants personally participated in the alleged
13 constitutional violations, and that he had similarly not alleged facts showing deliberate indifference
14 on the part of a John Doe medical provider. The Ninth Circuit stated, however, that the dismissal
15 should have been with leave to amend. Finally, the court vacated the denial of the IFP application
16 as moot, and remanded the action.

17       The mandate issued on November 28, 2016. (ECF No. 17.) District Judge Jones issued an
18 order on the mandate on January 4, 2017, reinstated the IFP application as active, and advised
19 Plaintiff that if he chose to file a second amended complaint curing the deficiencies noted in the
20 Ninth Circuit memorandum, it was to be filed by February 3, 2017. (ECF Nos. 19, 20.) Plaintiff
21 was further advised that if he failed to timely file a second amended complaint, the action would
22 proceed on the deliberate indifference claim against Dr. Mar. Plaintiff failed to timely file a second
23 amended complaint, and the court issued an order that the action would proceed only on the Eighth
24 Amendment deliberate indifference claim against Dr. Mar. (ECF No. 21.) The action was stayed
25 while the parties participated in an early mediation conference, which was ultimately unsuccessful.
26 ///
27 ///
28

The IFP application was granted, and service was accepted on behalf of Dr. Mar, who filed his answer on July 7, 2017. (ECF Nos. 26, 27, 28.) Dr. Mar filed his motion for summary judgment on September 27, 2017, arguing he was not deliberately indifferent to a serious medical need. (ECF No. 33.)

## II. LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). In considering a motion for summary judgment, all reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. See *Anderson*, 477 U.S. at 250.

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(A), (B).

If a party relies on an affidavit or declaration to support or oppose a motion, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

In evaluating whether or not summary judgment is appropriate, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine dispute as to a material fact; and (3) considering the evidence in light of the appropriate standard of proof. *See Anderson*, 477 U.S. at 248-250. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary

judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id*. at 248.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'...In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a genuine dispute of material fact, the opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Id*. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

> That being said,
> [i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion

and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).

At summary judgment, the court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine dispute of material fact for trial. *See Anderson*, 477 U.S. at 249. While the evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in its favor," if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id*. at 249-50 (citations omitted).

### III. DISCUSSION

**A. Eighth Amendment Deliberate Indifference Standard**

A prisoner can establish an Eighth Amendment violation arising from deficient medical care if he can prove that prison officials were deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A claim for deliberate indifference involves the examination of two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *rev'd on other grounds, WMX Tech, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997); *see also Akhtar v. Mesa*, 698 F.3d 1202, 1213 (9th Cir. 2012) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)). "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin*, 974 F.2d at 1059 (citing *Estelle*, 429 U.S. at 104); *see also Akhtar*, 698 F.3d at 1213. Examples of conditions that are "serious" in nature include "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *McGuckin*, 974 F.2d at 1059-60; *see also Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (citation omitted) (finding that inmate whose jaw was broken and mouth was wired shut for several months demonstrated a serious medical need).

If the medical need is "serious," the plaintiff must show that the defendant acted with deliberate indifference to that need. *Estelle*, 429 U.S. at 104; *Akhtar*, 698 F.3d at 1213 (citation

omitted). "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). Deliberate indifference entails something more than medical malpractice or even gross negligence. *Id*. Inadvertence, by itself, is insufficient to establish a cause of action under section 1983. *McGuckin*, 974 F.2d at 1060. Instead, deliberate indifference is only present when a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Akhtar*, 698 F.3d at 1213 (citation omitted).

Deliberate indifference exists when a prison official "den[ies], delay[s] or intentionally interfere[s] with medical treatment, or it may be shown by the way in which prison officials provide medical care." *Crowley v. Bannister*, 734 F.3d 967, 978 (9th Cir. 2013) (internal quotation marks and citation omitted).

"A difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 987 (citing *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989), *overruled on other grounds by Peralta v. Dillard,* 744 F.3d 1076 (9th Cir. 2014). Instead, to establish deliberate indifference in the context of a difference of opinion between a physician and the prisoner or between medical providers, the prisoner "'must show that the course of treatment the doctors chose was medically unacceptable under the circumstances' and that the defendants 'chose this course in conscious disregard of an excessive risk to plaintiff's health.'" *Snow*, 681 F.3d at 988 (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)).

**B. Analysis**

Preliminarily, Plaintiff mentions that the discovery cutoff ran without Dr. Mar responding to any requests, but Plaintiff did not move to extend the discovery cutoff or move to compel responses, and does not make an adequate request to delay disposition of this motion under Federal Rule of Civil Procedure 56(d). The court will therefore proceed with its analysis of the merits of Dr. Mar's motion.

///

1        According to Dr. Mar, he evaluated Plaintiff once, in February 2013, when he was a visiting physician at ESP, and noted Plaintiff's complains of pain while walking and history of surgeries on both feet. He examined Plaintiff's feet and gait, and noted Plaintiff appeared to walk with pain only in the exam room, and there was no verifiable sign of callous or skin breakdown on the feet. Plaintiff walked quickly and without a limp or evidence of pain while walking up and down stairs and across the prison tier. Thus, Dr. Mar opined that at that time there was no indication for special shoes. At that point, Plaintiff was on a "flat yard" restriction.

        Dr. Mar argues that Plaintiff presents only a difference of opinion regarding the need for medical shoes to treat his foot pain, and the facts do not demonstrate he suffered significant injury from denial of the shoes. In sum, he claims Plaintiff cannot show he acted in conscious disregard of an excessive risk to Plaintiff's health in denying him the special shoes.

        Plaintiff, on the other hand, asserts that he had extensive surgery on both feet, and has serious need for orthotic devices/footwear supported by his medical records. He acknowledges having access to different styles of shoes (presumably through the inmate store or ordering system), but maintains none are orthopedic in nature, and all prior attempts to relieve his pain failed, making it necessary to seek approval for outside shoes. Plaintiff contends he does suffer from a serious medical need which causes him great pain, and Dr. Mar acknowledges his prior surgeries and that he has flat feet. Plaintiff also asserts that Dr. Mar is not a podiatrist, and did not consult a specialist, and therefore, was not qualified to render an opinion regarding his need for orthopedic footwear.

        A review of Plaintiff's medical records reveals that Plaintiff sought orthopedic footwear beginning in October 2007, when it was noted he had severe flat feet bilaterally. (ECF No. 35-1 at 2.) An orthopedic consultation was recommended, as well as arch supports. (Id. 5-6.) Plaintiff continued to complain of pain in his feet and swelling in April 2008, and had apparently been denied insoles. (*Id.* at 4, 7.) In May 2008, he was fitted for custom orthotics. (*Id*. at 6.)

        In September 2008, Plaintiff reported pain in his feet and requested a "flat yard" restriction, noting that his arch supports and orthotics were not helping. (Id. at 8-9.) Eventually, in 2011, he had a "barrier free" classification, which Plaintiff was told was the equivalent of a flat yard

1  restriction. (*Id.* at 10, 14.) At that point, in June 2011, he asked for approval to buy supportive
2  shoes from an outside vendor. (*Id.* at 15.) At the time, he was advised medical did not order or
3  provide shoes. (*Id.*) In July 2011, Plaintiff asked to see an orthopedist for his foot condition. (*Id.*
4  at 16.) In September 2011, he advised that he had previously been approved for orthopedic shoes
5  when he had been in jail, and sought approval to purchase supportive shoes through an outside
6  vendor. (*Id.* at 18.) He reiterated this request in September 2012, and again in February 2013. (*Id.*
7  at 17, 20.)

8  At that point, he was told he should be seen to re-evaluate his condition, and he complained
9  on February 7, 2013, that he had lost feeling in the tip of his right big toe. (*Id.* at 20, 21-22.) He
10 saw the nurse regarding his request for orthopedic shoes on February 10, 2013, and he was referred
11 to Dr. Mar for an evaluation. (*Id.* at 30.)

12 Plaintiff saw Dr. Mar on February 13, 2013. (*Id.* at 29.) While acknowledging Plaintiff had
13 congenital flat feet with prior surgeries, Dr. Mar noted that Plaintiff's gait was normal and quick
14 while walking up and down stairs and across the tier, but once in the exam room his gait was slow,
15 with a right-leg limp and a grimace on his face. Dr. Mar concluded special shoes were not indicated
16 at that time. (*Id.*)

17 Plaintiff asked about orthopedic shoes again in June of 2013. (*Id.* at 24.) He was seen by
18 another doctor on August 8, 2013, and complained of pain and numbness in his feet. (*Id.* at 34.)
19 This doctor also denied the request for special orthopedic shoes. (*Id.*)

20 Plaintiff asked to be seen regarding the pain in his feet again in August 2014. (*Id.* at 25.)
21 He was seen, but there is nothing in the progress notes about his feet. (*Id.* at 34.) Instead, the notes
22 only mention that he was counseled about long term use of NSAIDs.

23 Plaintiff reiterated his request for orthopedic shoes on January 28, 2015, and was advised
24 he had a flat yard restriction, but no order for orthopedic shoes. (*Id.* at 26.) He asked to be seen for
25 approval to purchase orthopedic shoes again on May 7, 2017. (*Id.* at 37.)

26 He was seen on May 17, 2017, for complaints of chronic foot and ankle pain, and requested
27 custom order, high ankle shoes and arch supports. (*Id.* at 36.) The doctor he saw on that occasion
28 noted a history of bilateral bunionectomy and bilateral foot fractures as a teenager. (*Id.*) On exam,

Plaintiff's gait was steady and he was noted as being in no acute distress, though he reported his foot pain was a 4-6 on a scale of 0-10, depending on his level of activity. (*Id.*) He described his pain as sharp, dull, throbbing and constant. (*Id.*) On examination, his pain increased with bilateral ankle foot flexion and extension as well as side movements. (*Id.*) Plaintiff was assessed with bilateral foot pain, and approval was given for high ankle custom shoes and arch supports. (*Id.*, 38, 39, 40, 41.)

First, as to the objective element, Dr. Mar states that he does not concede Plaintiff suffered from a serious medical need; however, Plaintiff's medical records contain evidence of severe flat feet and chronic pain complaints. Therefore, there is at least evidence to raise a genuine dispute of material fact as to whether Plaintiff suffered from a serious medical need.

Second, the court will turn to the subjective element: whether Dr. Mar was deliberately indifferent to Plaintiff's medical condition. Dr. Mar argues that Plaintiff presents only a difference of opinion about whether he should have been ordered orthopedic shoes, and has not presented evidence that he suffered significant injury as a result of Dr. Mar's refusal to order special shoes. The medical records reflect that Plaintiff complained of foot pain and requested orthopedic footwear and a flat yard restriction off and on from 2007 until the time he saw Dr. Mar in February of 2013. The medical records preceding that visit, which Dr. Mar would presumably have had access to, included Plaintiff's statements that he was in pain and that the orthotics and arch supports he had received were not alleviating his symptoms. While Dr. Mar's assessment of Plaintiff was that he did not demonstrate a need for the shoes on examination, Plaintiff continued to complain of pain in his feet and requested custom shoes subsequent to Dr. Mar's denial. The doctor he saw in June 2013 did not order orthopedic footwear, and the doctor he saw in August of 2014 made no mention his request for special shoes; however, the doctor he saw in May 2017 documented his reports of pain on examination, his significant history relative to his feet, assessed him with chronic foot pain, and approved him for special shoes and arch supports. This evidence, coupled with the fact that he had severe flat feet bilaterally, had prior surgeries, and had previously been approved to wear special orthopedic footwear, creates at least a genuine dispute of material fact as to whether the difference of opinion between Plaintiff and Dr. Mar regarding Plaintiff's

need for orthopedic footwear rises to the level of deliberate indifference.

As such, Dr. Mar's motion for summary judgment should be denied.

### IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order **DENYING** Dr. Mar's Motion for Summary Judgment (ECF No. 33).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

DATED: February 16, 2018.

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE